IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| REGGIE PIPPIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 07-5114-CV-SW-ODS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born in 1959 and has a high school equivalency degree. He has prior work experience as a physical inventory clerk, concrete finisher, and carpenter. He has also worked as a photographer in his own photography business. Plaintiff filed his applications for benefits under Titles II and XVI of the Social Security Act on March 16, 2005, alleging a disability onset date of June 26, 2000. Plaintiff alleges he is disabled due to disorders of the back, shoulders, and hips. Plaintiff's claims were denied initially and there was no review at the reconsideration level. In a decision on March 12, 2007, after a hearing, the Administrative Law Judge ("ALJ") found Plaintiff was not under a disability as defined in the Social Security Act. On October 5, 2007, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. Therefore, the decision of the ALJ stands as the final decision of the Commissioner.

*A. Medical Records*

Plaintiff's relevant medical records begin in 1997. Plaintiff presented to Brian K. Ellefsen, D.O, eight times between January 1997 and July 1997. He complained of right shoulder, back, and hip pain. He was diagnosed with degenerative disc disease of the lumbar spine and underwent a subachromial decompression of his right shoulder. Plaintiff was given epidural steroid injections for his back and a prescription for Mepergan Forte. He recovered well from his shoulder surgery. (Tr. 254-58).

Plaintiff did not see Dr. Ellefsen again until June 8, 2000, when he returned with a recurrence of low back pain after bending over to feed his dog. Plaintiff was diagnosed with degenerative disc disease at L5-S1. Examination revealed a full range of motion and negative straight leg raise and Bragard's tests. Dr. Ellefsen prescribed Mepergan Forte and an epidural injection. Plaintiff subsequently cancelled his scheduled epidural injection. (Tr. 253).

On June 26, 2000, Plaintiff's alleged disability onset date, Plaintiff saw Arthur Steven Daus, M.D., with complaints of low back and leg pain. Plaintiff stated that the Mepergan Forte helped his pain, as did leaning to the side. Dr. Daus noted Plaintiff limping, favoring his right leg. Physical examination revealed negative straight leg, Patrick's, and bent leg raise tests. Plaintiff had a normal gait. (Tr. 190).

Plaintiff returned to Dr. Daus on July 14, 2000, with complaints of low back pain that radiated sciatically into his left leg and foot. Plaintiff reported he was 20% improved with medications and requested surgical intervention. (Tr. 189). On August 17, 2000, Plaintiff underwent an uncomplicated lumbar hemilaminectomy and microdiscectomy with foraminotomy. His final diagnosis was left sided L4-L5 herniated disc; left lateral recess stenosis L4-L5; lumbar spondylosis; and lumbar degenerative disc disease. After surgery, Dr. Daus noted that Plaintiff was ambulating well and that, despite some residual numbness, his leg pain was completely gone. (Tr. 128).

Plaintiff was examined again by Dr. Daus on October 16, 2000. He complained of back pain. He had a negative straight leg raise test, an equivocal Patrick's test on the left, and a negative Patrick's test on the right. (Tr. 185). In November 2000, Plaintiff reported low back pain but no leg pain. Dr. Daus stated his concern that while Plaintiff

2

"says he is worse, he actually has no leg pain, has a negative straight leg raise test, negative bent leg raise test and negative Patrick's test, has no sciatica, does have some numbness in his leg but has absolutely no weakness and more importantly no leg pain at all." Dr. Daus stated that Plaintiff's MRI results were insufficient to warrant an operation and that in the absence of leg pain, surgery would not be helpful. Dr. Daus recommended a diagnostic lumbar myelogram and follow-up CAT scan. (Tr. 184).

A radiological report of Plaintiff's hips on December 6, 2000 showed minimal degenerative osteoarthritic changes in the hip, no evidence of destructive process, and that the S1 joints were maintained in alignment. (Tr. 163). After reviewing Plaintiff's myelogram and CT scan, Dr. Daus and Plaintiff discussed the risks and benefits of redoing the lumbar microdiscectomy surgery. Dr. Daus explained that the surgery would probably not resolve his back pain and asked Plaintiff to seek a second opinion. (Tr. 157). Plaintiff received a second opinion from Dr. Majzoub, who found that Plaintiff had a disc herniation and recommended the operation. (Tr. 183).

On January 4, 2001, Dr. Daus performed the re-do surgery. Plaintiff was discharged the next day. He was ambulating well and in good condition. Plaintiff reported immediate relief of his sciatic leg pain. (Tr. 170-71). On January 19, 2001, Plaintiff reported that he felt considerably better. He was not limping any more. He reported no trouble sleeping or sciatic pain. His numbness had improved as well. (Tr. 182). On June 13, 2001, Plaintiff reported to Dr. Daus with back cramps and pain when attempting to kneel, bend, or squat while shooting photographs. Examination revealed paraspinal spasm, but no tenderness. (Tr. 181).

Plaintiff went to the emergency room in July 2001, complaining that his eyes were burning after a welding accident. (Tr. 148-50). Plaintiff also visited the emergency room in August to receive treatment for poison ivy. (Tr. 144-45).

Plaintiff saw Dr. Daus again on August 15, 2001. Plaintiff reported pain when stooping, bending or lying down on the floor and with "extreme walking" at an amusement park. Plaintiff requested lumbar epidural blocks. Examination revealed paraspinal spasm with pain on hyperextension and forward flexion. Dr. Daus prescribed medication for the spasms and cramps. On September 17, 2001, Plaintiff reported to

3

Dr. Daus that he had discontinued his medicines. The epidural injections helped Plaintiff. He had no significant pain but had numbness from his left knee down to his toes. Plaintiff told Dr. Daus that he was preparing two rooms for a "Project Graduation" event. On December 12, 2001, Plaintiff reported that he was walking for exercise and was on no medicines. He complained of right hip and low back pain, right leg numbness, but no right leg pain. A positive Patrick's test suggested possible right sided intrinsic hip disease. Dr. Daus recommended a TENS unit and prescribed Chlorzoxazone and Ultram. (Tr. 177-79).

On May 16, 2002, Plaintiff reported to Dr. Ellefsen with complaints of left shoulder pain. Plaintiff stated that he was having trouble pulling back a bow while hunting. Dr. Ellefsen filled out a permit for Plaintiff to hunt with a crossbow with a permanent disability. Plaintiff returned on September 9, 2002, complaining of right hip and left shoulder pain. X-rays of the right hip revealed degenerative changes; x-rays of the left shoulder revealed calcific rotator cuff tendinitis. Plaintiff received injections in his right hip and left shoulder and a prescription for Lortrab. Plaintiff received another injection on January 16, 2003. On May 8, 2003, Dr. Ellefsen diagnosed Plaintiff with degenerative joint disease of the right hip and a rotator cuff tear to the left shoulder. Plaintiff received another set of injections and a prescription for OxyContin. On June 5, 2003, Plaintiff reported that the injections and medication had helped his pain considerably. On October 2, 2003, Dr. Ellefsen ordered an MRI of the left shoulder, which revealed a full thickness rotator cuff tear. Dr. Ellefsen recommended arthroscopy of the left shoulder. (Tr. 245-252).

Plaintiff underwent shoulder surgery on December 16, 2003. Plaintiff's recovery progressed well during six weeks of physical therapy. (Tr. 242-43). Throughout 2004, Plaintiff received several injections in both hips and a prescription for Celebrex. Dr. Ellefsen noted that x-rays revealed avascular necrosis of the right hip and early degenerative changes of the left hip. On November 22, 2004, Plaintiff reported aggravated hip pain from climbing and jumping at a "spook house" on Halloween. Dr. Ellefsen recommended Plaintiff see an arthroplastic specialist. (Tr. 239).

On January 13, 2005, Dr. Ellefsen gave Plaintiff another hip injection. He noted

4

that the injections were effective for less than two months at a time. Dr. Ellefsen stated that Plaintiff had degenerative joint disease of the lumbar spine. After noting that Plaintiff had not worked on a regular basis for several years, Dr. Ellefsen encouraged him to pursue Social Security Disability benefits. Dr. Ellefsen also suggested Plaintiff seek evaluation by an orthoplasty specialist for hip replacement surgery. Plaintiff was prescribed naproxen sodium and Hydrocodone for pain. (Tr. 238). On March 10, 2005, Dr. Ellefsen gave Plaintiff another hip injection, prescribed Kadian, and provided Plaintiff a handicap parking sticker. (Tr. 233).

On May 9, 2005, Dr. Ellefsen noted that Plaintiff had been turned down for disability benefits. Plaintiff reported that his pain medication had not helped him. He noted that x-rays revealed no further breakdown of the hip cartilage or joint space. (Tr. 228). On May 16, 2005, an MRI of Plaintiff's hips showed no evidence of avascular necrosis, fracture, or significant joint effusion. (Tr. 264). An MRI of Plaintiff's back on June 1, 2005, showed disc degeneration with moderate osteoarthritis at the L4-L5 level, mild disc degeneration at the L5-S1 level, mild disc osteophyte complex bulge at L4-L5 with mild nerve root compression, and mild disc osteophyte complex bulge at L5-S1 with no evidence of compromise. (Tr. 261). On July 22, 2005, Dr. Ellefsen completed a form for Plaintiff indicating that Plaintiff had a poor diagnosis with osteoarthritis, facet arthritis, and degenerative disc disease. (Tr. 219).

On September 18, 2006, over a year since Plaintiff's last visit, Dr. Ellefsen completed a physical capacity evaluation for Plaintiff. He stated that as of December 31, 2000, Plaintiff could sit for less than one hour at a time in an eight hour work day; stand for less than one hour at a time in an eight hour work day; sit for two hours total in an eight hour work day; stand and/or walk for two hours total in an eight hour work day; was limited in repetitive reaching; could frequently lift and carry up to four pounds, occasionally lift and carry nine, and rarely lift and carry nineteen; should never bend, squat, stoop, climb and reach above shoulder-level with the left arm; could occasionally reach above shoulder-level with the right arm; was severely affected by his pain; and was markedly affected by fatigue. (Tr. 267-68).

5

*B. Hearing Testimony*

Plaintiff testified in front of the ALJ at a hearing on January 18, 2007. He reported that he was no longer on pain medication and that he had not seen a doctor for almost a year because he did not have enough money. (Tr. 286). Plaintiff stated that he had applied for Medicaid, but that he had not provided the proper medical records in time and that he had not applied again. (Tr. 281). He testified that his hips and back hurt every day, and that his left leg goes numb. (Tr. 287). Plaintiff reported that the pain medications he had been prescribed had taken the edge off of his pain, but not completely. (Tr. 286). Plaintiff testified that he could stand and sit for only 15 minutes at a time and was not capable of working a 40-hour work week. (Tr. 289-90). He stated that he could not walk for one block without needing to rest. He stated that he falls sometimes, but does not use a cane or a walker. (Tr. 288). Plaintiff testified that he drives a car sometimes, but that it is very painful. (Tr. 280). He stated that he usually is capable of showering, dressing, and otherwise caring for himself, but that he sometimes requires the assistance of his mother. Plaintiff stated that can prepare meals in the microwave, but he cannot do other household chores. He said that he spends his days watching TV and moving about the house trying to get relief from his pain. (Tr. 294). He testified that he can no longer do things he used to enjoy, like hunting, fishing, boating, and camping. (Tr. 295).

A vocational expert ("VE") also testified at the hearing. The ALJ posed a hypothetical question assuming an individual limited to light or sedentary work, with the additional restrictions of no climbing or balancing; occasional stooping; no kneeling, crouching, or crawling; no overhead work; reaching only at waist level; and no working in extreme cold or with vibrating tools. The VE stated that at the unskilled, light level, the hypothetical person could perform work as a fast food worker and as an arcade attendant. The VE stated that at the unskilled, sedentary level, that person could work as an information clerk and as a call out operator. The VE also stated that if such a person had the additional restriction of having to stand up or sit down no more often than every thirty minutes he would still be able to do these jobs. The VE then stated that if this hypothetical person was also limited to only occasional reaching then he

6

would still be capable of performing work as a call out operator, but not the other jobs.

The ALJ issued an unfavorable decision on March 12, 2007. She found Plaintiff was status post lumbar hemilaminotomy, lumbar microdiscectomy, and foreminotominy with subsequent revision procedure. She found Plaintiff had residual degenerative changes in his back, limitation of motion and complaints of pain and that he has degenerative changes in his hips with complaints of pain in the shoulders and multiple other anatomical areas. She found that these disorders imposed some limitations on Plaintiff's ability to function in the workplace, and that he therefore has an impairment as that term is defined in the regulations. However, the ALJ determined that Plaintiff's impairments did not meet or equal any listing level of severity.

The ALJ found Plaintiff's testimony to be no more than partially credible and inconsistent with significant evidence of record. She also found the opinion of Plaintiff's treating physician, Dr. Ellefsen, to be unsupported by the record as a whole. The ALJ concluded that Plaintiff was capable of performing at least a range of sedentary work where he does not have to perform any overhead work, with no more than occasional reaching, kneeling or stooping and no crouching, climbing, or balancing. The ALJ relied on the opinion of the VE in finding that Plaintiff could no longer perform his past relevant work as a physical inventory clerk, concrete finisher, and carpenter, but that he could perform other jobs which exist in significant numbers, specifically, those of fast food worker, arcade attendant, information clerk, and call out operator. Plaintiff argues that the ALJ acted improperly in discrediting the opinion of Dr. Ellefsen, in conducting Plaintiff's credibility analysis, and in formulating Plaintiff's Residual Functional Capacity ("RFC").

## II.  DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some

evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

### A. The Opinion of Dr. Ellefsen

More than one year after Plaintiff's last appointment, Dr. Ellefsen completed a physical capacity evaluation for Plaintiff setting out Plaintiff's limitations as of December 31, 2000, Plaintiff's date last insured. Dr. Ellefsen concluded that Plaintiff's pain and fatigue severely and markedly affected his ability to sustain full-time employment. Generally speaking, a treating physician's opinion is entitled to deference. This general rule is not ironclad; a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. E.g., Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996). An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000).

The ALJ found Dr. Ellefsen's conclusions were not supported by substantial evidence in the record, and therefore did not give them controlling weight. The ALJ first noted that Plaintiff ran a photography business between 2000 and 2005. While Plaintiff did not earn substantial gainful activity level wages, the ALJ stated that such work activity did demonstrate some capacity to work. The ALJ also noted that other medical records suggested Plaintiff was engaging in activities inconsistent with the limitations found in Dr. Ellefsen's evaluation. For instance, in July 2001, Plaintiff was treated in the emergency room for eye burns received while he was welding. In August 2001, Plaintiff was treated in the emergency room for poison ivy. Also in August 2001, Plaintiff

8

aggravated his lower back after doing some "extreme walking" at an amusement park.

A record from September 2001 noted that Plaintiff had decided to discontinue all of his medications. The record also noted that Plaintiff was preparing two rooms for a Project Graduation and that he particularly enjoyed this activity. In December 2002, Plaintiff reported that he was walking for exercise. In May 2002, Dr. Ellefsen filled out a permit for Plaintiff to use a crossbow for hunting with a disability. Additionally, in November 2004, Plaintiff was seen with complaints of hip pain after climbing and jumping at a "spook house" on Halloween. The ALJ found that Plaintiff's continued participation in a diverse range of activities was "inconsistent with disability and clearly belie[s] the level of severity asserted by Dr. Ellefsen." (Tr. 17).

The ALJ also discussed records of medical examinations that cast doubt on Dr. Ellefsen's conclusions. For example, the ALJ noted Plaintiff's lumbar myelogram showed very little objective pathology. (Tr. 156). In June 2000, Dr. Daus reported that Plaintiff had a negative straight leg test and a normal gait. (Tr. 190). In September 2001, Plaintiff was off of his medication and reported being in no real pain. (Tr. 178). In December 2001, Plaintiff was still off his pain medication and had been walking for exercise. Based on the foregoing, the ALJ's finding of inconsistency between Dr. Ellefsen's opinion and other substantial evidence is reasonable. Therefore, the ALJ was justified in discounting Dr. Ellefsen's opinion in determining Plaintiff's RFC. See Goff v. Barnhart, 421 F.3d 785, 790-91 (8th Cir. 2005).

### B. Plaintiff's Credibility

Based on the foregoing evidence of record, the ALJ also found Plaintiff's testimony regarding the severity of his pain to be only partially credible. The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that he experiences. House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the

9

> disability results from a medically determinable physical or
> mental impairment, direct medical evidence of the cause and
> effect relationship between the impairment and the degree of
> claimant's subjective complaints need not be produced. The
> adjudicator may not disregard a claimant's subjective
> complaints solely because the objective medical evidence
> does not fully support them.
>
> The absence of an objective medical basis which supports
> the degree of severity of subjective complaints alleged is just
> one factor to be considered in evaluating the credibility of the
> testimony and complaints. The adjudicator must give full
> consideration to all of the evidence presented relating to
> subjective complaints, including the claimant's prior work
> record, and observations by third parties and treating and
> examining physicians relating to such matters as:
>
>   1. The claimant's daily activities;
>   2. the duration, frequency and intensity of the pain
>   3. precipitating and aggravating factors;
>   4. dosage, effectiveness and side effects of medication;
>   5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's
> subjective complaints solely on the basis of personal
> observations. Subjective complaints may be discounted if
> there are inconsistencies in the evidence as a whole.

739 F.2d at 1322.

The ALJ considered the evidence of Plaintiff's activities and objective medical records when evaluating Plaintiff's credibility. The ALJ noted that Plaintiff's testimony of doing very little in the way of daily activities was inconsistent with the records suggesting he participated in a wide range of activities, and ran counter to his claims of debilitating pain. She also noted that Plaintiff had a poor work record prior to his claim of disability with a history of low earnings in most years that he worked. (See Tr. 52-57). She also noted that Plaintiff was not taking any pain medication and had not sought treatment within the one year prior to the hearing. While Plaintiff testified that he could not afford medication or treatment, he also stated that he had failed to follow-

10

through on obtaining Medicaid. In evaluating the credibility of Plaintiff's subjective complaints, the fact that Plaintiff had failed to pursue aid in paying for medication and medical care is relevant. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007) (quoting Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003)). The ALJ pointed to substantial evidence in the record that supported her decision to find Plaintiff's testimony only partially credible; the Court defers to this finding.

### *C. RFC Formulation*

Plaintiff asserts that the ALJ did not use the proper form under Social Security Ruling 96-8p, in formulating Plaintiff's RFC because she did not describe the RFC in a function by function manner before citing the RFC in exertional terms only. The ALJ stated that Plaintiff has "retained the residual functional capacity to perform at least a range of sedentary work where he does not have to perform any overhead work, with no more than occasional reaching, kneeling or stooping, and no crouching, climbing, or balancing." (Tr. 18). Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Walking and standing are required only occasionally. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). The ALJ formulated Plaintiff's RFC based upon all of the relevant evidence she found credible, and it adequately describes the most Plaintiff can do despite his limitations.

The ALJ then found that Plaintiff could perform jobs such as a fast food worker, arcade attendant, information clerk, and call out operator. However, the VE described the jobs of fast food worker and arcade attendant as being at the light level of work. Therefore, they are beyond Plaintiff's retained capacity to do only a range of sedentary work. Likewise, the VE stated that the position of information clerk required more than occasional reaching. This job is also beyond Plaintiff's RFC as found by the ALJ. However, there is substantial evidence in the record to support the ALJ's finding that Plaintiff can perform jobs, such as a call out operator. Therefore, there is substantial

11

evidence in the record as a whole to support the ALJ's finding that Plaintiff was not under a disability as defined in the Social Security Act, and it must be affirmed.

### III.  CONCLUSION

The Commissioner's decision denying benefits is affirmed.

IT IS SO ORDERED.

                                                   /s/ Ortrie D. Smith
                                                   ORTRIE D. SMITH, JUDGE
DATE: September 10, 2008            UNITED STATES DISTRICT COURT